IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MARKUS J. HOLLINGSWORTH,<br>      Plaintiff | )<br>)  Civil Action No. 22-333 Erie<br>) |
| v. | )  District Judge Susan Paradise Baxter<br>) |
| RABE ENVIRONMENTAL SYSTEMS,<br>INC.,<br>      Defendant. | )<br>)<br>) |

**MEMORANDUM OPINION**

## I. INTRODUCTION

### A. Relevant Procedural History

Plaintiff Markus J. Hollingsworth, an African American, instituted this civil action on November 2, 2022, against Defendant Rabe Environmental Systems, Inc., asserting claims of wrongful discharge and retaliation on the basis of race in violation of both Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq.* ("Title VII") and the Pennsylvania Human Relations Act, 43 Pa. C.S. 951, *et seq.* ("PHRA"), and a Title VII claim of racial harassment, which is construed as a hostile work environment claim.

Defendant filed an answer to Plaintiff's complaint on February 13, 2023 [ECF No. 8], and the parties subsequently completed discovery. Now pending before the Court is Defendant's motion for summary judgment [ECF No. 22]. Plaintiff has filed a brief in opposition to Defendant's motion, to which Defendant has filed a reply brief. This matter is now ripe for consideration.

1

**B.     Relevant Factual History**[1]

Plaintiff, a journeyman steamfitter, worked for Defendant for approximately three weeks, from May 11, 2021 through June 3, 2021. (ECF No. 26, at ¶ 1). Plaintiff was hired by Defendant through UA Steamfitters Local 449 ("Local 449"), which was party to a collective bargaining agreement with the Mechanical Contractors Association of Western Pennsylvania, of which Defendant was a member. (Id. at ¶¶ 3-4). During his employment, Plaintiff worked on a project at the Erie High School involving the demolition and removal of the school's heating, ventilation, and air conditioning ("HVAC") systems. (Id. at ¶ 2).

On the third day of his employment, May 14, 2021, Plaintiff received an employee warning notice memorializing an incident between Plaintiff and Brian Trayer ("Trayer"), the foreman on the Erie High School project. (Id. at ¶ 7). The notice contained a handwritten note from Trayer documenting the following:

> On 5-14 Markus and I had a disturbance. He was working in the tunnel on hangers (reworking hangers that he installed the day before). I saw him sitting in the dirt and [said] if you need something to do I'll find something. Markus thought I was singling him out and threw his hardhat hitting a beam in front of me then he got in my face yelling at me. I let this go as a freebie without a warning or additional confrontation. This was his first week on the job with the expectation that incidents like this would not reoccur. (Id.).

According to Plaintiff, Trayer had asked him what he was doing "three times in five minutes," which irritated him and "probably" caused him to raise his voice because he felt he was being singled out. (Id. at ¶¶ 24, 26-27). Later the same day, Plaintiff telephoned project manager

---

[1] The factual history set forth herein has been gleaned from Defendant's concise statement of material facts [ECF No. 24], and Plaintiff's response to Defendant's statement of material facts [ECF No. 26], to the extent the facts set forth

2

Robert Kubiak ("Kubiak"), who documented the conversation, noting that Plaintiff complained that "he felt singled out because he was questioned on what he was doing regarding cutting hangers that were already installed." (Id. at ¶ 9). Kubiak noted that he "offered to move [Plaintiff] to a different site [but] he replied that he was ok with working at [the school]." (Id.).

On the next scheduled workday, May 17, 2021, Plaintiff arrived late at the jobsite and was issued another employee warning notice. (Id. at ¶ 10). Plaintiff refused to sign the notice because he believed he should have been given a verbal warning, rather than a written one. (Id. at ¶ 29). After he was presented with the written warning and refused to sign, Plaintiff called Kubiak and left a voicemail message complaining about receiving a written warning and stating, "I'm not signing this paper. Because I know the drill…. If you don't want me here just go ahead and let me know you all don't want me here and I get the fuck outta here…." (Id. at ¶ 32). Plaintiff then left the jobsite without permission and arrived unannounced at Defendant's offices and demanded a meeting with Kubiak and Mark Patrizia ("Patrizia"), the company President. Patrizia's handwritten notes of the meeting indicate that they discussed Plaintiff's "perception that [Trayer] was messing with him" and explained to Plaintiff that Trayer "has the right as foreman to ask, watch, and discuss with [Plaintiff] his work activity" and that Trayer "may not be courteous" because he was under "a lot of pressure." (Id. at ¶ 35). Plaintiff was then driven back to the job site by Kubiak. (Id.).

The following Monday, Plaintiff was issued another employee warning notice advising him that he would be discharged if he did not provide overdue mandatory documentation by May 24, 2021. (Id. at ¶ 11). According to Plaintiff, union steward Jamie Flint ("Flint") singled him out

---

in each are unopposed and/or amply supported by the evidence of record.

3

regarding production of a second form of identification that was required by Defendant, which Plaintiff had not yet provided, by telling him on a Friday, in front of the whole crew, "Markus Hollingsworth, of you don't bring your second ID you will be fired on Monday morning." (Id. at ¶ 20).

On Wednesday, June 2, 2021, Defendant was made aware of an incident that occurred between Plaintiff and Gary Roth ("Roth"), another steamfitter on the job. Roth documented the incident in a handwritten statement, stating, in pertinent part, as follows:

> … After lunch around 2:00 – 2:30 we were demoing pipe, 2 guys had just left the room. And [Plaintiff] was in the air of ladder cutting a loft ¾" pipe but left a hanger in the middle. He then proceeded to go up and try to get the hanger off. Then asked me for my channel locks (he did not have his all day). He struggled with channel locks then asked for Sawzall. He then struggled with that. The asked for my channel locks again. After 6 mins the pipe was out of the air. I made a comment that he struggled way to[o] hard and that he should have used a rope. He then blew up and said I aint breaking my back for nobody… I then commented that he was a lazy piece of shit and I didn't feel confident in his skill set… he came over got in my face inches away and proceeded to have a hand on my chest [saying] [a]ll you mother fuckers are the same. Your [sic] all racist he says…. I moved away trying to keep my composure. He then said I was a racist again and he aint a brother that's going to be pushed around…. (Id. at 12).

Upon request, Plaintiff then provided a written statement providing his version of the incident on June 2, 2021. In his statement, Plaintiff noted the following:

> I was demoing pipe on the second floor of Erie High School. [Roth], my co-worker stated "that pipe is kicking your ass." I told him that I'm not going to rush or speed up my work to get hurt. He stated that I was going to bring up the race card again and I told him that doesn't mean I am thinking that. That's when he left the work area. (Id. at ¶ 13).

The following day, on June 3, 2021, Patrizia reviewed all of the documentation involving Plaintiff from May 11, 2021, through June 2, 2021, including four documented corrective action

4

warnings, two of which involved threatening and disruptive conduct. (Id. at ¶ 14). Based on his review, Patrizia decided to terminate Plaintiff's employment for cause, documenting Plaintiff's discharge, in pertinent part, as follows:

> After review of all the warning notices and the elevation in aggression by [Plaintiff], and the documented accounts I have determined that due to yesterday events of putting his hands on Gary Roth I cannot allow [Plaintiff] to continue his employment and have terminated him. The possibility of [Plaintiff] to escalate further gives me grave concern. Violence against any employee is not acceptable and grounds for immediate termination…. (Id.).

Following his discharge, Plaintiff filed a grievance through Local 449, which was not resolved and proceeded to an arbitration hearing, after which Plaintiff's grievance was dismissed in its entirety. (Id. at ¶ 15). The instant lawsuit ensued.

## II.   DISCUSSION

As a preliminary matter, Plaintiff's employment discrimination claims under the PHRA are subject to the same analysis as discrimination claims under Title VII. See Atkinson v. LaFayette College, 460 F.3d 447, 454 n.6 (3d Cir. 2006) ("Claims under the PHRA are interpreted coextensively with Title VII claims"); Simpson v. Kay Jewelers, Inc., 142 F.3d 639, 644 n.4 (3d Cir. 1998) (explaining that courts use the same framework to assess Title VII and PHRA claims). Thus, all claims will be examined under the Title VII framework, with the understanding that the result is equally applicable to Plaintiff's PHRA claims.

### A.   Discriminatory Discharge

Title VII provides, *inter alia*, that it is an "unlawful employment practice for an employer to … discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such

5

individual's age...." 42 U.S.C. § 2000e-2(a)(1).

Title VII cases are examined according to the burden-shifting framework that was first established by the United States Supreme Court in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). Within this framework, Plaintiff must first establish a *prima facie* case of discrimination by proving the following four basic facts: (i) he is a member of a protected class; (ii) he was qualified for the position in question; (iii) he suffered an adverse employment action; and (iv) the action occurred under circumstances that could give rise to an inference of intentional discrimination. Makky v. Chertoff, 541 F.3d 205, 214 (3d Cir. 2008), citing McDonnell Douglas, 411 U.S. at 802. Proof of these basic facts raises an inference of discrimination, which is given the force and effect of a rebuttable presumption. Texas Dept. of Cmty. Affairs v. Burdine, 450 U.S. 248 (1981).

Once a prima facie case is established, the employer must then articulate a legitimate, non-discriminatory reason for the adverse employment action it took against the plaintiff. Shaner v. Synthes, 204 F.3d 494, 500 (3d Cir. 2000). The employer need not persuade the court that it was actually motivated by the proffered reasons, but needs only to raise a factual issue as to whether it discriminated against the plaintiff. This burden is satisfied if the employer "simply 'explains what [it] has done' or 'produc[es] evidence of legitimate nondiscriminatory reasons.'" Board of Trustees of Keene State College v. Sweeney, 439 U.S. 24, 25, n.2 (1978). Thus, "the employer need only produce admissible evidence which would allow the trier of fact rationally to conclude that the employment decision had not been motivated by discriminatory animus." Burdine, 450 U.S. at 257.

Once the employer has met its relatively light burden of articulating a legitimate reason

for the adverse employment decision, the burden shifts back to the plaintiff to show by a preponderance of the evidence that the employer's proffered explanation is pretextual. Id. Plaintiff may meet this burden either directly, by persuading the court that the employer's action was more likely motivated by a discriminatory reason, or indirectly, by showing that the employer's proffered explanation is unworthy of credence. See McDonnell Douglas, 411 U.S. at 804-805.

Throughout this burden-shifting paradigm the ultimate burden of proving intentional discrimination always rests with the plaintiff. See Burdine, 450 U.S. at 253-256. Plaintiff may meet this burden if her "prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated." Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 148 (2000).

### 1. *Prima Facie* Case

To reiterate, Plaintiff must establish at the outset that: (i) he is a member of a protected class; (ii) he was qualified for the position in question; (iii) he suffered an adverse employment action; and (iv) the action occurred under circumstances that could give rise to an inference of intentional discrimination. Makky, 541 F.3d at 214. Here, Defendant has conceded the first three elements of Plaintiff's *prima facie* case; however, Defendant maintains that Plaintiff "cannot demonstrate the fourth element of his required *prima facie* showing because he has not identified any conduct that can arguably give rise to an inference of discrimination." (ECF No. 23, at 7) (emphasis omitted). The Court agrees.

To establish the fourth element, Plaintiff must produce "'evidence adequate to create an

inference that an employment decision was based on a[n] [illegal] discriminatory criterion...."
Pivirotto v. Innovative Sys., Inc., 191 F.3d 344, 355 (3d Cir. 1999), quoting Teamsters v. United States, 431 U.S. 324, 358 (1977) (alterations in original). The "central focus" of the prima facie case "is always whether the employer is treating some people less favorably than others because of their race, color, religion, sex, or national origin." Sarullo v. U.S. Postal Serv., 352 F.3d 789, 798 (3d Cir. 2003).

Here, Plaintiff has acknowledged that his race-based claims against Defendant are limited to the four incidents described in the foregoing factual history: (1) getting reprimanded by Flint for his failure to produce a second form of identification; (2) being repeatedly questioned by Trayer about what he was doing on May 14, 2021; (3) receiving a written, rather than a verbal warning for being late to work on May 17, 2021; and (4) accepting Roth's version of what took place during the alleged physical confrontation between Roth and Plaintiff on June 2, 2021. (ECF No. 26, at ¶ 41).

Notably, however, Plaintiff admits that he is unable to identify a single similarly situated employee outside of his protected class who was treated more favorably than him regarding any of the issues forming the bases of his claims. (Id. at ¶¶ 42-44). Moreover, he acknowledges that his perception that similarly situated Caucasian workers were treated more favorably is based upon his subjective feeling that "the system is rigged." (Id. at ¶ 48). Plaintiff's opposition brief does nothing to dispel the subjective nature of his claim.

In his opposition, Plaintiff argues that his termination was based on Roth's allegation that Plaintiff "put his hands on" Roth during their altercation on June 2, 2021. Plaintiff alleges that Defendant's investigation of the incident was deficient and that they turned a "deaf ear" to his

claim that he never touched Roth and simply accepted Roth's word. (ECF No. 32, at p. 4). As a result, Plaintiff "told them that he was being discriminated against because of his race," based solely on his subjective belief that "obviously you are doing this because I'm black." (Id. at p. 5).

It is well-settled that "[a]n inference of race-based discrimination in violation of Title VII cannot arise simply from an employee's subjective belief that his or her race somehow influenced the challenged employment action." Howard v. Blalock Elec. Serv., Inc., 742 F.Supp.2d 681, 702 (W.D. Pa. 2010); see also Merke v. Martin, 2015 WL 1263138, at *6 (E.D. Pa. Mar. 18, 2015), aff'd 645 Fed. Appx. 120 (3d Cir. 2016) (same); Tucker v. Thomas Jefferson Univ., 484 Fed. Appx. 710 (3d Cir. 2012) ("the subjective belief that race played a part in [plaintiff's] firing is insufficient"); Tillman v. Redevelopment Auth., 2013 WL 5594701, at *8 (E.D. Pa. Oct. 11, 2013) ("A plaintiff's own unsubstantiated, subjected beliefs of suspicions alone would not suffice to persuade a rational trier of fact that [race] was a factor in the termination decision"); Martin v. Healthcare Bus. Res., 2002 WL 467749, at *6 (E.D. Pa. Mar. 26, 2002) ("Plaintiff's mere pronouncement or subjective belief that she was terminated because her race ... is not a substitute for competent evidence").

Because Plaintiff's attempt to establish an inference of intentional discrimination is based solely on his own subjective belief, Plaintiff has failed to satisfy the fourth element of his *prima facie* case of race discrimination. Thus, summary judgment will be granted in favor of Defendant on Plaintiff's claim of discriminatory discharge.

### B. Hostile Work Environment

In order to state a claim of discrimination resulting from a hostile work environment, "a

plaintiff must show (i) that he suffered intentional discrimination because of his [protected status]; (ii) the discrimination was severe or pervasive; (iii) the discrimination detrimentally affected him; (iv) the discrimination would detrimentally affect a reasonable person of the same [protected status]; and (v) there is a basis for employer liability." Torres v. City of Philadelphia, 907 F.Supp.2d 681, 688 (E.D. Pa. 2012), citing Andreoli v. Gates, 482 F.3d 641, 643 (3d Cir. 2007). Succinctly stated, a plaintiff must "show that his workplace 'permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe and pervasive to alter the conditions of [his] employment and create an abusive working environment.'" Culler v. Sec'y of U.S. Veteran Affairs, 507 Fed. Appx. 246, 249 (3d Cir. 2012), quoting Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 116 (2002).

In Clark County Sch. Dist. v. Breeden, 532 U.S. 268, 270 (2001), the Supreme Court established a framework for analyzing the "severe and pervasive" prong:

> [H]arassment is actionable under Title VII only if it is so severe or pervasive as to alter the conditions of the victim's employment and create an abusive working environment. Workplace conduct is not measured in isolation; instead, whether an environment is sufficiently hostile or abusive must be judged by looking at all the circumstances, including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.

(internal citations and quotation marks omitted).

In evaluating a hostile work environment claim, the Court is mindful that "offhanded comments, and isolated incidents (unless extremely serious)" are not sufficient to sustain a hostile work environment claim. Faragher v. City of Boca Raton, 524 U.S. 775, 788 (1998).

Rather, the "conduct must be extreme to amount to a change in the terms and conditions of employment...." Id.

Under the foregoing standards, Plaintiff has failed to state a cognizable hostile work environment claim. Significantly, Plaintiff admits that no one at Defendant's jobsite ever used any racial slurs or racially derogatory language. (ECF No. 26, at ¶ 45). In addition, Plaintiff could not identify any witness who would be able to corroborate or substantiate his allegations of racial discrimination (Id. at ¶ 46), which seriously undermines his claim that the alleged discriminatory conduct was "severe and pervasive." Indeed, Plaintiff has provided no evidence whatsoever to show that his workplace "permeated with discriminatory intimidation, ridicule, and insult" such that he was subjected to an "abusive working environment" that detrimentally affected his work performance. Instead, Plaintiff has merely attempted to create discriminatory animus where there is no evidence to support one, and any "hostility" Plaintiff has allegedly experienced in the workplace has been prompted by his own unfounded speculation and subjective feeling that "the system is rigged." (Id. at ¶ 48).

Based on this record, the Court finds that no reasonable jury could conclude that any discriminatory conduct occurred that was severe or pervasive enough to create a hostile work environment, and summary judgment will be granted in favor of Defendant accordingly.

### C. Retaliation

Under Title VII's anti-retaliation provision, it is an "unlawful employment practice" for a covered employee "to discriminate against" an employee "because he has opposed any practice made an unlawful employment practice" by Title VII, or "because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing"

11

thereunder. 42 U.S.C. § 2000e-3(a). Like his discriminatory discharge claim, Plaintiff's retaliation claim is examined under the *McDonnell Douglas* burden-shifting framework. Carvalho-Grevious v. Delaware State Univ., 851 F.3d 249, 257 (3d Cir. 2017).

To establish a *prima facie* case of retaliation under Title VII, a plaintiff must tender evidence demonstrating that: "'(1) [he] engaged in activity protected by Title VII; (2) the employer took an adverse employment action against [him]; and (3) there was a causal connection between [his] participation in the protected activity and the adverse employment action.'" Moore v. City of Phila., 461 F.3d 331, 340-41 (3d Cir. 2006), quoting Nelson v. Upsala Coll., 51 F.3d 383, 386 (3d Cir.1995).

Here, Defendant argues that Plaintiff cannot satisfy the third element of his *prima facie* case because he has failed to establish a causal connection between any of the alleged adverse employment actions and Plaintiff's protected activity.

At the *prima facie* stage, the Third Circuit has recognized that:

> To establish the requisite causal connection a plaintiff usually must prove either (1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action, or (2) a pattern of antagonism coupled with timing to establish a causal link. In the absence of that proof the plaintiff must show that from the evidence gleaned from the record as a whole the trier of fact should infer causation.

Zerfa v. Acosta, Inc., 2023 WL 2713914, at *5 (W.D. Pa. Mar. 30, 2023), quoting Lauren W. v. DeFlaminis, 480 F.3d 259, 267 (3d Cir. 2007) (internal quotation marks and citations omitted).

Here, Plaintiff's retaliation claim is based exclusively on the asserted temporal proximity between his complaint that he felt he was being discriminated against because he is black, which he voiced during his meeting with Patrizia and Kubiak on May 17, 2021, and his termination that

occurred seventeen days later, on June 3, 2021. (ECF No. 32, at p. 11). Plaintiff argues that this temporal proximity, together with the totality of circumstances in the record, "supports the inference that [Plaintiff] was terminated because he put race discrimination 'on the table' by raising his concerns to Patrizia and Kubiak." (Id.). The Court disagrees.

Generally, temporal proximity of a retaliatory act to a protected activity is probative, but not dispositive of the causation element. Estate of Smith v. Marasco, 318 F.3d 497, 512-13 (3d. Cir. 2003). "'The mere fact that adverse employer action occurs after a complaint will ordinarily be insufficient to satisfy the plaintiff's burden of demonstrating a causal link between the two events.'" Kier v. F. Lackland & Sons, LLC, 72 F.Supp.3d 597, 617 (E.D. Pa. 2014), quoting Krouse v. Am. Sterilizer Co., 126 F.3d 494, 503 (3d Cir. 1997) (internal quotation omitted).

"The law in this Circuit is fairly well established that mere temporal proximity between the protected activity and the adverse employment action ordinarily will not be sufficient to meet Plaintiff's burden of demonstrating a causal connection between the two events, unless the interim period is so short as to be unusually suggestive of retaliatory motive." Bush v. Donahoe, 964 F.Supp.2d 401, 425 (W.D. Pa. 2013), citing LeBoon v. Lancaster Jewish Comm. Ctr. Ass'n, 503 F.3d 217, 232 (3d Cir. 2007) (citing Clark Cnty. Sch. Dist. V. Breeden, 532 U.S. 268, 273-74 (2001)) ("temporal proximity alone, when 'very close,' can in some instances establish a prima facie case of retaliation"); see also Roseberry v. City of Phila., 2016 WL 826825, at *14 (E.D. Pa. Mar. 3, 2016), aff'd 716 Fed. Appx. 89 (3d Cir. 2017), quoting Lorah v. Tetra Tech, Inc., 541 F.Supp.2d 629, 636 (D.Del. 2008) ("To be 'unusually suggestive' of a retaliatory motive, 'the temporal proximity must be immediate'").

Thus, the Third Circuit has suggested that a temporal proximity of two days is sufficient to establish causation, see Farrell v. Planters Lifesavers Co., 206 F.3d 271, 279 & n.5 (3d Cir. 2000); Jalil v. Avdel Corp., 873 F.2d 701, 708 (3d Cir. 1989); however, a temporal proximity of ten days has been recognized as being sufficient to establish causation *only when accompanied by other evidence of wrongdoing.* Shellenberger v. Summit Bancorp, Inc., 318 F.3d 183, 189 (3d Cir. 2003) (emphasis added); see also Killen v. N.W. Human Servs., Inc., 2007 WL 2684541, at *8 (E.D. Pa. Sept. 7, 2007) (holding that temporal proximity of seventeen days was insufficient to establish causation). "This suggests that the temporal proximity must be measured in days, rather than in weeks or months, to suggest causation without corroborative evidence." Conklin v. Warrington Twp., 2009 WL 1227950, at *3 (M.D. Pa. Apr. 30, 2009).

Based on the foregoing, the Court finds that the period of seventeen days between Plaintiff's alleged protected activity and his termination is not "unusually suggestive" of retaliatory motive to create an inference of retaliatory motive without additional "corroborative evidence." Such corroborative evidence may include "evidence of a pattern of antagonism or retaliatory motive during the intervening period" or evidence that the employer provided "inconsistent reasons for the adverse employment action." Bush, 964 F.Supp.2d at 425, citing Farrell, 206 F.3d 271, 280-81 (internal citation omitted); Waddell v. Small Tube Products, Inc., 799 F.2d 69, 73 (3d Cir. 1989); see also Krouse, 126 F.3d at 503-04 (where temporal proximity is lacking, courts may look to the intervening period for other evidence of retaliatory animus); Marasco, 318 F.3d at 513 (holding that in cases where "the temporal proximity is not so close as to be unduly suggestive," the court of appeals has "recognized that 'timing plus other evidence may be an appropriate test'").

14

No such evidence is present here. Plaintiff merely suggests that "the totality of the circumstances" supports the inference of causation without citing any evidence to support this suggestion. As Defendant aptly observes, "it is quite telling that Plaintiff suffered no reprisal whatsoever immediately following his May 17, 2021 complaint." (ECF No. 23, at p. 19). Indeed, other than Plaintiff's own subjective beliefs and speculation, no evidence of racial or retaliatory animus exists. Rather, viewing the timing of events in light of the "totality of circumstances" in this case, it is apparent that Plaintiff's discharge occurred in direct response to, and immediately following, his altercation with another co-worker (Roth), during which Plaintiff reportedly "placed his hands on" the co-worker. Thus, Plaintiff has failed to establish a causal connection sufficient to satisfy the third element of his *prima facie* case of retaliation.

Nonetheless, even if Plaintiff had successfully established a *prima facie* case, he has utterly failed to present any evidence to prove that Defendant's proffered reason for terminating him was not the true reason for his discharge, but was merely a pretext for prohibited retaliation. In particular, Plaintiff must show "both that the reason was false, and that [retaliation] was the real reason." St. Mary's Honor Ctr. V. Hicks, 509 U.S. 502, 515 (1993); Young v. City of Philadelphia Police Dept., 651 Fed. Appx. 90, 97 (3d Cir. 2016) (the plaintiff must "produce evidence showing that the employer's reason for its action was false and retaliation for engaging in the protected activity was the real reason, or "but-for" cause, for its actions"). "In order to show that an employer's stated reason behind an adverse employment action was 'merely a pretext for unlawful retaliation,' a plaintiff may point to 'such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence.'"

15

Krouse, 126 F.3d at 504 (internal citations and quotations omitted). This he has not done.

For the foregoing reasons, therefore, summary judgment will be entered in favor of Defendant on Plaintiff's retaliation claim

An appropriate Order follows.